## Case No. 16,990.

### The VOLUNTEER.

[Brown, Adm. 159;[1] 1 Chi. Leg. News, 185.]

District Court, N. D. Ohio. Jan., 1870.

ADMIRALTY JURISDICTION—INLAND WATERS.

1. The admiralty has jurisdiction of a collision between a canal-boat and a tug engaged exclusively in harbor service and occurring upon navigable waters wholly within the body of a county.

[Cited in The Ella B., 24 Fed. 508; The St. Louis, 48 Fed. 313.]

[2. Where a tug towing a canal boat up the harbor at Cleveland by mistake gave to a descending tug a signal of two whistles, when she only intended to give one, and a collision resulted, held, that she was liable for damage occasioned thereby to her tow.]

This was a libel to recover damages to the canal-boat Fred. Wood, caused by a collision with the tugs Volunteer and Nichols, in the harbor of Cleveland, on the 7th of October, A. D. 1868. [It appears from the evidence, that on that day, the tug Volunteer engaged to tow the canal boat from Clark's dock up to the entrance of the Ohio canal; that in the progress up the harbor and river, the tug Nichols came in sight, going down the river with a tow; that at the proper time and distance, the Volunteer, which was going up on the left bank and west side of the river, blew two whistles, indicating that the tug Nichols should take the left side of the river. Under the harbor rules the ascending boat has the right to indicate, by signal or whistle, the side the descending boat shall take. On this occasion the Volunteer made a mistake, and whistled twice when she intended only one whistle. The Nichols obeyed the signal as was her duty, and steered for the left side. The tug Volunteer also continued her previous course, which was on the left or west side of the river, and of consequence the collision occurred to the tow of the Volunteer. It may be remarked here that the proof is satisfactory that the Nichols in her course to the left side, and as she approached the Volunteer, discovered that there was a mistake or blunder somewhere, slackened her speed, and was at the moment of the collision stationary or backing.][2]

Willey & Cary, for libellant.

Canfield & Buckingham, for claimant.

SHERMAN, District Judge. The first question raised is, whether the court has jurisdic-

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

[2] [From 1 Chi. Leg. News, 185.]

tion in admiralty of those vessels used only in the harbor of Cleveland and within the body of a county in Ohio. It is claimed the only jurisdiction, if any, this court can exercise is by virtue of the act of congress of 1845 [5 Stat. 726], and that this act does not confer general admiralty jurisdiction over vessels navigating these lakes, much less over vessels only plying, as these vessels do, within the body of the county of Cuyahoga. This has been a much mooted question, and there has been much controversy on the subject, both in this country and elsewhere. It cannot be said that it is yet a well settled question either way. But so far as this district is concerned, it may be considered res adjudicata. In the Revenue Cutter Case [Case No. 11,713], it was, after an elaborate argument, and due examination and deliberation, decided by my predecessor, that, under the constitution and laws of the United States, admiralty jurisdiction did extend over the Lakes and their navigable waters. This decision has never been reversed, and the learned opinion then announced has never been answered or much controverted. I shall, therefore, adhere to it as the law of this court, until it is reversed or modified by the supreme court. The same may be said as to the admiralty jurisdiction over tugs and other vessels plying in the navigable waters and harbors of the Lakes, and used in the commerce carried on between the states bordering on the Lakes. It has been frequently decided that these vessels, though not actually employed in transporting freight and passengers to points and places outside of the state, yet are links of transportation necessary and indispensable to enable the commerce between the states to be duly carried on; and, therefore, they are properly subject to admiralty jurisdiction. Both of these tugs were used in towing vessels engaged in commerce between the states, in the harbor, and outside to their destination. The canal-boat injured was actually employed at the time in bringing a cargo to a vessel destined to Chicago or Detroit. The tugs and the canal-boat were all, therefore, links of transportation, and come within the uniform rulings of the courts bordering on the Lakes.

2 [The next question is, did this collision, occur without the fault of the libellant? His canal boat was fastened, by stern and bow lines, and a line in the centre, to the tug Volunteer, for the purpose of being towed up to the mouth of the canal. The motive power as well as the directing power was in the tug. The libellant, as the captain of the canal-boat, nor his crew, had any power whatever over his boat, or its course or speed. While thus rendered powerless, and relying, as he had a right to rely, upon the reasonable skill and knowledge of the persons running the tug, a collision occurred, and he undoubtedly has a right to recover the damages sustained. It is difficult to say from the proof what the actual damages are. It is in proof that he paid for the immediate repair of the boat a bill of $56.85, but claims that it was only in part repaired. The amount necessary to fully repair it, and also the demurrage he is entitled to, is a matter of conjecture with him and other witnesses. It is therefore impossible to arrive at the exact amount of damages. I think that I would be doing no injustice if I fix the damage and demurrage at $250, and award him that amount and his costs. Should one or both of these tugs be made liable for this amount? It is not disputed that the first fault is in the Volunteer, in blowing two whistles, when only one was intended. It is further not disputed that the Volunteer continued in her course up the west of the river, notwithstanding her signal that she was going up on the east side. It also appeared that the Nichols obeyed the signal, as was her duty, and went down the west side, and, as the two vessels approached each other, and it was apparent that a collision would occur, the Nichols slackened her speed and finally stopped altogether, while the Volunteer kept up her former speed and made no successful effort either to slacken or stop. If she had made the same effort that was made by the Nichols no collision would have occurred. Having full control of the course to be taken by both tugs, having made the first mistake, and having shown no effort to correct that mistake, either by giving other signals or by slackening or stopping altogether, I am of opinion that she should be liable for the consequences of the collision. In view of the fact that the Nichols did come to a full stop when it was seen that a collision would occur, and that it was not her fault that she was going down the west side of the river, because she was bound by law and the harbor regulations to obey the signal given by the ascending boat, I think she was not in any way to blame, and should not be answerable for any of the damages. It is well settled in law, and by the usages of these Lakes, that when two vessels, propelled by steam, are approaching each other so that there is danger of collision, and confusion and uncertainty exists as to the course each is to pursue, that both must reverse their engines and come to a stop. If either vessel fails to do so she is in fault and is answerable for the consequences. The proof is satisfactory that the tug Nichols did comply with this rule. She reversed her engine and came to a full stop, while the Volunteer did not, but kept up her speed.] 2

Such being the law of the case, and being satisfied from the evidence that the tug Volunteer was in the fault, the decree will be against her alone, for such damages as may be found, upon reference, that the canal-boat sustained. Libel dismissed as to the tug Nichols. Decree for libellant.

[See Case No. 8,260.]

2 [From 1 Chi. Leg. News, 185.]                    2 [From 1 Chi. Leg. News, 185.]